IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Donna Moore Glenn, | ) | Civil Action No.: 8:13-2099-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Donna Moore Glenn ("the plaintiff"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, D.S.C., this matter was referred to United States Magistrate Judge Jacquelyn D. Austin for pretrial handling.  On December 23, 2014, the magistrate judge issued a Report and Recommendation in which she determined that the Commissioner's decision was not based on substantial evidence.  (ECF No. 34 at 33.)  Accordingly, the magistrate judge recommended reversing and remanding the Commissioner's decision.  (ECF No. 34 at 36.)  The Commissioner filed Objections on January 9, 2015. (ECF No. 35.)  No reply was made.  For the reasons stated below, the Court declines to adopt the Report and Recommendation and affirms the Commissioner's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

The Report and Recommendation sets forth in detail the relevant facts and standards of law on this matter, and the Court incorporates them and summarizes below in relevant part.  The plaintiff filed applications for DIB and SSI alleging a disability onset date of April 1, 2000.  (R. at 159–60, 152–58.)  The plaintiff's applications were denied initially and on reconsideration.  (R. at 129-33, 135-38.) A hearing was held before an Administrative Law Judge ("ALJ") who issued an unfavorable decision on March 16, 2012, finding that the plaintiff was not disabled within the meaning of the Act.  (R. at 9-44.)  The Appeals Council denied the plaintiff's request for review (R. at 1-3), making the ALJ's decision the final decision of the Commissioner.  The plaintiff subsequently filed an action in this Court on August 2, 2013. (ECF No. 1.)

## REPORT AND RECOMMENDATION

The magistrate judge recommends reversing and remanding the ALJ's decision. (ECF No. 34 at 36.)  The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court.  *Mathews v. Weber*, 423 U.S. 261 (1976).  The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to her with instructions.  28 U.S.C. § 636(b)(1).  "However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no

2

objections are addressed.  While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations."  *Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (internal citations omitted).

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .");  *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964); *see, e.g., Daniel v. Gardner*, 404 F.2d 889 (4th Cir. 1968); *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966); *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976).  In order for a reviewing court to determine whether the Commissioner based a decision on substantial evidence, "the decision must include the reasons for the determination . . . ."  *Green v. Chater*, 64 F.3d 657, 1995 WL 478032, *2 (4th Cir.1995) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir.1986)). The statutorily mandated standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner.  *See, e.g., Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299 (4th Cir. 1968). Accordingly, "the court [must] uphold the [Commissioner's] decision even should the court

disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). As noted by Judge Sobeloff in *Flack v. Cohen*, 413 F.2d 278 (4th Cir. 1969), "[f]rom this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Id.* at 279. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## DISCUSSION

The Commissioner filed objections to the Report and Recommendation ("Objections") on January 9, 2015 (ECF No. 35). The Commissioner objects to the magistrate judge's recommendation concerning the ALJ's Listing 12.05C analysis. The magistrate judge concluded that the ALJ had failed to fully or properly (1) consider the plaintiff's educational history; (2) address the plaintiff's intellectual functioning; and (3) explain why he determined certain tests to be more reliable.

The magistrate judges recitation of the applicable law concerning Listing 12.05C is thorough and accurate and the undersigned would not repeat it here.[1]


**I.    Listing 12.05C**

---

[1] As always, the Court says only what is necessary to address such objections against the already meaningful backdrop of a thorough Report of the magistrate judge, incorporated entirely by specific reference, herein, to the degree not inconsistent. Exhaustive recitation of law and fact exists there.

The defendant complains, in three respects, that the magistrate judge improperly found deficiency in the ALJ's 12.05C analysis.  More precisely, the defendant says that the ALJ's original consideration of any deficits in the plaintiff's adaptive functioning was proper.  The Court would say generally two things.  First, the ALJ's decision, broadly, and with respect to this specific issue – deficits in adaptive functioning – was uncommonly thorough.  The magistrate judge block quoted this analysis verbatim.  The ALJ did two things well.  First, he considered numerous aspects of the plaintiff's life and behavior, carefully separating out each relevant skill area for analysis.  (R. at 25-287); *see Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002) (relying on two American medical associations to view adaptive functioning as including areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety).  Additionally, the ALJ made some "link" between the factual description of the plaintiff's activities in these respects and his actual mental functioning.   (R. at 25-287); *see Dozier v. Comm'r of Soc. Sec.*, 736 F. Supp. 2d 1024, 1037 (D.S.C. 2010).

The magistrate judge was also commendable in her recommendation.  Namely, she protected what the undersigned has guarded for years, the importance of evidence of poor IQ scores.  And, while the line for a qualifying IQ score under the Listings is an admittedly contrived one – in that, some numerical test score had to be identified as the cut, so to speak – this effort of the Commissioner to so routinely find no disability for individuals with mixed-result test scores is a peculiar regularity.  These individuals are almost universally mentally impaired by any reasonable view of that medical word.  Of course, test scores are by no means the last word on adaptive functioning.  *See Norris v. Astrue*, 2008 WL

4911794, at *3 (E.D.N.C. Nov. 14, 2008). The Court does not mean to imply otherwise. But, the Court would not fault the magistrate judge if she was eagerly defensive of that piece of evidence. The undersigned prefers it.

That being said, under the standard of review, the Court cannot accept the recommendation to remand for the Listing 12.05C analysis. The magistrate judge cited numerous evidence, contrary to the ALJ, relevant to deficits in adaptive functioning. (ECF No. 34 at 24-27.) But, to accept it, as part of a basis to remand, too closely approximates a kind re-weighing. As the Court has said so often, that someone might put forward competing evidence that allows a different result imagined, is of no consequence. *See Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The ALJ was especially thorough in the evidence cited with respect to the Listing analysis (R. at 25-28), as mentioned above, and his characterization of that evidence has not been placed in issue, other than his consideration of the IQ score specifically. The Court will say some more about it.

To meet Listing 12.05, a claimant must satisfy the "diagnostic description" in the introductory paragraph and any one of the four sets of criteria—A, B, C, or D. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The diagnostic description describes intellectual disability as "significantly sub-average general intellectual functioning with deficits in adaptive functioning." *Id.* § 12.05. A low I.Q. alone cannot satisfy the diagnostic description of Section 12.05. *See Norris v. Astrue*, 2008 WL 4911794, at *3 (E.D.N.C. Nov. 14, 2008). The diagnostic description requires findings on both intelligence and adaptive functioning. *See id.* (citing *Justice v. Barnhart*, 431 F. Supp. 2d 617, 620 n.2 ("The 'manifestation of deficits in adaptive functioning' is a separate and distinct element that must be proven.").

6

IQ scores are indeed relevant to determining whether a claimant meets the diagnostic description, but they do not satisfy it alone.

The ALJ, here, indicated that he considered each of the test scores given to the plaintiff through the years related to intellectual ability, and it appears that only two of the tests gave an Full Scale IQ score (FSIQ) score to the plaintiff—in 1992 of 74 and in 2009 of 66—the ALJ rejected the FSIQ score of 66 for the reason that it was not consistent with the longitudinal record, noting that the score was not consistent with the plaintiff's work history, previous scores, and functioning. *See Weaver v. Astrue*, 2010 WL 1947216, at *5 n.5 (M.D.N.C. May 13, 2010) (Mag. J. Mem. & Rec.); *see also, e.g., Caldwell*, 2011 WL 4945959, at *4 (holding that adjudicator properly considered work history in context of determining whether claimant established deficits in adaptive functioning under Listing 12.05C); *Cheatum v. Astrue*, 388 F. App'x. 574, 576 n. 3 (8th Cir. 2010) (work history is relevant to whether claimant has established deficits in adaptive functioning under Listing 12.05).  As the magistrate judge noted, while evidence of an individual's ability to live independently and hold a job may certainly support a conclusion that the individual is functioning at a higher level than his IQ score suggests, thereby precluding a finding of mental retardation, *see, e.g.*, *Hancock v. Astrue*, 667 F.3d 470, 474-76 (4th Cir. 2012), the fact that a claimant is able to work, raise a family, and otherwise live successfully in the community does not necessarily preclude a finding of mild mental retardation where other deficits in adaptive functioning are present, s*ee Davis v. Astrue*, 2008 WL 1826493, at *4 (D.S.C. Apr. 23, 2008) (fact that the plaintiff had worked for 33 years as a cleaning lady did not bar her award of benefits where her impairment met Listing 12.05C).

But, the ALJ did find the longitudinal record inconsistent with the scores.  And, there

7

was no legal error in doing so.

The magistrate judge recognized that she could not reweigh the evidence but characterized her recommendation as relying on some inconsistency of the ALJ in how he justified his differentiation between the various available test scores.  (ECF No. at 33-34.) In other words, she found that the ALJ did not specifically explain his justification for one over the other.  But, respectfully, he did not have to.  Once, the ALJ found that the lowest score, of whatever kind, was not consistent with the plaintiff's actual activity and functionality, or better said, once he concluded that the plaintiff's adaptive functionality did not exhibit any deficits practically speaking, he was justified in rejecting any otherwise qualifying score.    Said differently, the scores at that point became largely less relevant. *Hancock*, 667 F.3d at 474-76.   And, therefore, the precise rationale for reliance on non-qualifying scores relative to qualifying ones as between various tests, at that point, need not be so specifically explained.  The ALJ's Listing analysis was based on substantial evidence and cannot be disturbed.

Having accepted the defendant's objection on the Listing analysis and, further, concluding that such analysis was based on substantial evidence, the Court must consider the other bases for appeal, originally made by the plaintiff, but not considered by the magistrate judge for her reasonable conclusion that the Listing analysis alone constituted grounds for remand.

## II.    Residual Functional Capacity

In brief, the plaintiff additionally argues that the ALJ did not include certain mental and physical impairments in the residual functional capacity, even where the ALJ acknowledged them.  The Court would address each in turn.

The plaintiff asserts that the ALJ "failed to . . . address" the plaintiff's alleged limitations in getting along with coworkers. (Pl. Brief at 17-18.) This assertion does not accurately characterize the ALJ's decision. In fact, the ALJ explicitly quotes Dr. Larry Clanton's opinion that the plaintiff "'is able to sustain appropriate interaction with peers and coworkers without interference in work.'" (R. at 24, 353). In addition, the ALJ explicitly cites the plaintiff's own admission that her impairments do not limit her ability to get along with others. (R. at 25, 220.)  The plaintiff emphasizes that she was involved in altercations with her coworkers (Pl. Brief at 17; R. at 103.)   The ALJ explicitly acknowledges these altercations but emphasized that they occurred "years ago." (R. at 14, 17, 25, 26, 29, 36,103).   The plaintiff, therefore, cannot sustain her burden to establish that the ALJ committed prejudicial error by adopting the opinions of the state agency psychologists that the plaintiff did not have any limitations concerning her ability to interact with coworkers.

The plaintiff further asserts that the ALJ "ignored [her] difficulties in adapting to change and dealing with stress." (Pl. Brief at 18.)  With respect to adapting to change, however, the ALJ explicitly cites the separate opinions of Dr. Craig Horn and Dr. Clanton that the plaintiff would respond appropriately to changes. (R. at 23-24, 334, 353.) With respect to stress, the ALJ explicitly restricted the plaintiff to working in a "low stress" environment. (R. at 16.)  There is no error.

Drs. Horn and Clanton both opined that the plaintiff had a moderate limitation in concentration, persistence, and pace ("CPP").  (R. at 328, 347.) The plaintiff argues that the ALJ "failed to account" for this limitation. (Pl. Brief at 18)  This is not a complete view. Drs. Horn and Clanton opined that – notwithstanding a moderate limitation in CPP – the plaintiff did not have any restrictions beyond those that the ALJ included in his RFC finding,

and the ALJ adopted these opinions.  An ALJ adequately accounts for the claimant's moderate CPP limitation by relying upon medical opinion evidence that restricted the claimant to low-stress, unskilled simple tasks that did not involve frequent public contact. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir.2001) (where state psychologist both identified claimant as having deficiencies of concentration, persistence or pace and pronounced claimant possessed the ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately, captured claimant's deficiencies in concentration persistence or pace); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001) (where ALJ's hypothetical incorporated concrete restrictions identified by examining psychiatrist regarding quotas, complexity, and stress, ALJ did not err in failing to include that claimant suffered from deficiencies in concentration, persistence, or pace).  These decisions suggest that a limitation to simple tasks – standing alone, without any further restrictions – will adequately account for the claimant's moderate CPP limitation.

With respect to her physical impairments, the plaintiff argues that the ALJ "failed to address [them] in a meaningful way." (Pl's Mem. 20.) In support of this argument, the plaintiff emphasizes her appointment at which Ms. Hawkins diagnosed CTS; Dr. Phillips' observation that the plaintiff's main problem appeared to be hand pain; x-rays from February 2009; and the medial branch block injections that the plaintiff received.  (Pl. Brief at 21-22, 270, 275, 282.) The ALJ, however, specifically cites all of these facts (R. at 12, 17, 29, 31, 32, 34, 35, 37, 41) and explicitly finds that the plaintiff's degenerative joint

disease of the cervical spine is a severe impairment that significantly limits the plaintiff's ability to perform basic work activities (R. at 12). More generally, the ALJ supportably adopted the opinions of the state agency physicians – both of whom are "highly qualified" experts in disability determinations – that these facts did not give rise to any limitations beyond those that the ALJ included in his RFC finding. *See* 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I); see also 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

## III.    Development of the Record

Finally, the plaintiff argues that the ALJ violated his duty to develop the record, primarily by failing to obtain a consultative examination concerning the plaintiff's physical allegations. (Pl. Brief. at 23-24.)  As the defendant represents, a Christopher O'Connor, Esq., filed a brief with the ALJ on the plaintiff's behalf prior to the hearing. (R. at 256-60.) Jason Andrighetti, Esq., represented the plaintiff at the hearing. (R. at 87.)  The ALJ acted within the bounds of his discretion by determining that such an examination was unnecessary.

The scope of an adjudicator's duty to develop the record is fairly minimal. *See, e.g., Bell v. Chater*, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (ALJ's duty is "'only to develop a reasonably complete record'"). "The pertinent inquiry is 'whether the record contained sufficient medical evidence for the ALJ to make an informed decision . . . .'" *Craft v. Apfel*, 1998 WL 702296, at *3 (4th Cir. Oct. 6, 1998).  With respect to ordering consultative examinations, "the regulations state that the ALJ has discretion." *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003). More fully, the governing regulations provide that the ALJ "may" or "might" decide to purchase a consultative examination "when the evidence as a whole is insufficient to support" a decision or in order to "try to resolve an

inconsistency in the evidence."  20 C.F.R. §§ 404.1519a(b), 416.919a(b).

As noted, the ALJ in the instant case adopted the opinions of the state agency physicians – both of whom are "highly qualified" experts in disability determinations – that the plaintiff did not have any limitations beyond those that the ALJ included in his RFC finding.

It is worth additionally saying that the defendant did develop the record by obtaining two consultative evaluations concerning the plaintiff's mental allegations (R. at 310-13 &314-16) and by arranging for the testimony of a vocational expert.  (R. at 111-15). *See Craft*, 1998 WL 702296, at *3 (emphasizing similar facts in holding that adjudicator did not violate duty to develop record). Moreover, the plaintiff has not made any showing that a consultative examination concerning her physical abilities would have aided her application for benefits. *Id.*; *see also Camp v. Massanari*, 2001 WL 1658913, at *1 (4th Cir. 2001) (failure to develop record harmless absent "showing that additional evidence would have been produced that might have led to a different decision").

The Court has considered all the arguments of the plaintiff on appeal.  Any not specifically mentioned are hereby rejected, based on a complete review of the record and applicable law, or as otherwise not differently dispositive of the outcome of the case.

## CONCLUSION

Respectfully, the Court cannot concur in the ultimate recommendation of the Magistrate Judge but incorporates the law and facts herein by reference to the extent not inconsistent with this order.  The decision of the Commissioner to deny benefits is, however, AFFIRMED.

**IT IS SO ORDERED**.

/s/Bruce Howe Hendricks
United States District Judge

February 12, 2015
Greenville, South Carolina